J. WESLEY MAXWELL *vs.* O. E. HEWEY, et al.

Androscoggin.    Opinion September 11, 1913.

*Assignment.  Bond for a Deed.  Consideration.  Delivery.  Foreclosure Mortgage.  Payment.  Purchase Money.  Reimbursement.*

The defendants held a bond for a deed of land for which they had given their notes. They desired to get a deed. One Jordan had agreed to lend them the money to take up the notes, and take a mortgage himself. The parties all met at the office of the plaintiff who was to make the writings. Jordan did not pay the money agreed, but the plaintiff did, upon the mutual understanding, that Jordan would reimburse him. The money was applied to the payment of the defendants' notes. The defendants got their deed, and executed a note for the amount, and a mortgage to secure it, both of which run to Jordan. It was agreed that the note and mortgage should remain in the plaintiff's hands until Jordan repaid him, which he never did. Subsequently Jordan assigned the mortgage and transferred the note to the plaintiff: *Held,*

1.  That Jordan was the lender of the money which the defendants borrowed.
2.  That the delivery of the mortgage to the plaintiff for Jordan, assented to by Jordan at the time, was a sufficient delivery, and that the mortgage became effective from that time.
3.  That it is immaterial to the defendants whether there was any consideration for the assignment of the mortgage by Jordan to the plaintiff.

On exceptions by the defendants.  Exceptions overruled.

This is a real action brought to foreclose a mortgage on real estate described in plaintiff's writ, and situate in Webster in the County of Androscoggin. The mortgage and the note thereby secured were originally made by the defendants to one James G. Jordan and by him transferred, by assignment of mortgage and endorsement of the note, to the plaintiff. The defendants pleaded the general issue, and filed a brief statement, alleging in substance that said mortgage and note were never delivered to Jordan; that Jordan gave no consideration for the assignment and that neither Jordan nor the plaintiff has any interest in them.

At the conclusion of the plaintiff's evidence, the defendants moved for a nonsuit, which motion was denied by the presiding Justice. The defendants introduced no testimony and the presiding Justice directed a verdict for the plaintiff and the defendants excepted. The case is stated in the opinion.

*Newell and Skelton,* for Plaintiff.

*McGillicuddy & Morey,* for defendants.

SITTING: SAVAGE, C. J., SPEAR, CORNISH, KING, BIRD, PHIL-BROOK, JJ.

SAVAGE, C. J. Writ of entry to foreclose a mortgage. At the conclusion of the plaintiff's evidence, the defendants moved for a nonsuit. This was denied. The defendants introduced no testimony, and the presiding Justice directed a verdict for the plaintiff. The defendants excepted.

The mortgage in suit, and the note it secured, were originally made running to one Jordan, who later assigned the mortgage and endorsed the note to the plaintiff. The defendants, who were the mortgagors and makers of the note, by their brief statement filed with the general issue, and also, in argument, contend that the mortgage and the note were never delivered to Jordan, that Jordan gave no consideration for them, that there was no consideration for the assignment, and that neither Jordan, nor the plaintiff, has any interest in them.

The case shows the following facts. In March, 1899, the defendants took a bond for a deed of the land in question from one Golder, and gave their notes therefor. In October of the same year Golder executed a deed of the land to the defendants. He did not then deliver the deed, but left it in the hands of one Jones, his agent, to be delivered, upon payment of the balance due on the notes. Golder then lived in California. In June 1901, Golder wanted his notes paid. There was then due $454.73. The defendants apparently did not have the money available. Jones interested himself to see if the money could be hired. The plaintiff who had drafted all the papers up to that time, in some way became cognizant of the situation, and undertook to act as a kind of intermediary in

procuring the money. He interviewed Jordan, who agreed to furnish the money and take a mortgage. At this point, June 22, 1901, all the parties, Jones representing Golder, Jordan and the defendants met the plaintiff at his office for the purpose of completing the transaction. The plaintiff was to draft the mortgage and note. Jones had with him the undelivered deed from Golder to the defendants, but declined to deliver it, or have it used to furnish the description for the mortgage, until the amount due Golder had been paid. Thereupon the plaintiff gave his check to Jones for the amount, and Jones delivered the deed. The mortgage and note were then drafted by the plaintiff and executed by the defendants. But Jordan did not then furnish the money to reimburse the plaintiff for the amount advanced. It was understood however between him and the plaintiff that he was to do so later. And it was agreed that the mortgage and note should remain in the plaintiff's hands until Jordan repaid him. This Jordan never did. But several years afterwards he assigned the mortgage and transferred the note to the plaintiff. And this suit followed.

Now, what was the legal effect of the transactions of June 22? The defendants borrowed the money. They received it, by having it applied in payment of their note to Golder. They got their title. And although the plaintiff actually advanced the money to Jones for the defendants, it was done upon the understanding in which Jordan participated, that Jordan was to reimburse him. Therefore the plaintiff advanced the money on Jordan's account, and Jordan became impliedly liable to the plaintiff for it. So far as the defendants were concerned, it was Jordan's money. In law he was the lender, as they were the borrowers. The promised subsequent reimbursement by Jordan to the plaintiff did not concern them. That was a matter between the plaintiff and Jordan. They executed the mortgage to Jordan to secure the payment of the money they had borrowed from him. The mortgage was left with the plaintiff, upon an understanding which concerned only him and Jordan, that he was to hold it until Jordan repaid him. That ended the defendant's part in the transaction. That was a delivery of the mortgage to the plaintiff for Jordan, assented to by Jordan at the time. We think that was a sufficient delivery. It

was a completed transaction so far as the defendants were interested. The mortgage was delivered by them as an effective, operative instrument from that time.

In this, and in other respects also, this case is unlike *Rhodes* v. *School District in Gardiner,* 30 Maine, 110, relied upon by the defendants. In that case a grantor deposited a deed with a third party to be delivered upon payment of the purchase money, and not otherwise. And a delivery by the depositary was held ineffective. Here, the mortgagors had already received the mortgage money. There, the deed was not to become operative until the purchase money was paid. Here, we think it was intended to be instantly operative as security. There, there was no delivery by the grantor, or by his authority. Here, as we have already stated, we think there was.

The defendants have no interest in the question whether there was any consideration for the assignment by Jordan to the plaintiff. The assignment is under seal, and that imports a consideration, if it were necessary to show one. But Jordan might make the assignment as a gift, if he chose. The defendants could have no legal cause to complain. And certainly they have none, if Jordan, instead of paying the money, which he had agreed to pay to the plaintiff, gave him the mortgage, and the plaintiff so accepted it.

*Exceptions overruled.*